Levorne GLINSEY, Adm'x, et al.,
Plaintiffs-Appellees,

v.

BALTIMORE & OHIO RAILROAD CO.,
Defendant-Appellant.

No. 73–1545.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 28, 1973.

Decided April 16, 1974.

Charles F. Clarke, Cleveland, Ohio, for defendant-appellant; Henry D. Light, Lee E. Larson, Cleveland, Ohio, on brief; Squire, Sanders & Dempsey, Cleveland, Ohio, of counsel.

Donald P. Traci, Spangenberg, Shibley, Traci & Lancione, Cleveland, Ohio, for plaintiffs-appellees.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from a judgment against Appellant in the amounts of $135,000 for the estate of Willie Glinsey and $20,000 for James Glinsey. Federal jurisdiction is founded on diversity of citizenship. The case arose from a railroad-highway crossing accident, in which Willie Glinsey was killed and James Glinsey was injured. The collision occurred on December 5, 1969, at 9:30 p. m., in a light industrial and residential area of Elyria, Ohio.

Appellees James Glinsey and Levorne Glinsey, administratrix of Willie Glinsey's estate, sued the Baltimore & Ohio Railroad Company (B&O), claiming that the train which struck the Glinseys' car had failed to blow its whistle and sound its bell as required under an Ohio statute, thus causing the accident. Before trial, Appellees filed a motion *in limine*, seeking to exclude evidence that Willie Glinsey may have been intoxicated and that the Glinseys' car may have been stolen.

At a pre-trial conference Appellees argued that such evidence was not relevant because section 4955.34, Ohio Rev. Code,[1] imposes absolute liability and deprives a railroad which has violated section 4955.32 of the defense of contributory negligence. By arguing that section 4955.34 imposes such liability, Appellees were employing a legal theory which apparently had not before been urged upon an Ohio state court. The District Court agreed with Appellees and imposed "strict liability" on Appellant, thus excluding evidence of the driver's conduct.[2] The District Court ruled that, as a matter of law, the train's failure to sound its whistle and bell (if proven) was at least one proximate cause of the accident. The jury's role was thus relegated to determining whether the train had sounded its whistle and bell before striking the Glinseys' car. The jury decided against the B & O on this question.

Appellant asserts that the District Court committed several errors. The most significant alleged error stems from Appellant's contention that sections 4955.32 and 4955.34 do not deprive a railroad of the defense of contributory negligence. A second error asserted is that the District Court removed from the jury the question of proximate cause. Third, Appellant asserts that evidence should have been admitted to

---

1. All subsequent statutory citations are to the Ohio Revised Code.

2. District Court Memorandum Opinion and Order, reported at 356 F.Supp. 984 (N.D. Ohio 1973).

The District Court ruled that evidence Appellant would have presented concerning Appellees' conduct was legally inadequate to establish Appellees' conduct as the "sole proximate cause" of the accident. The proffered evidence was testimony that the driver had a 0.127 per cent blood alcohol content, that the car contained wine and beer bottles, that the car was traveling around 50 miles per hour toward the crossing, and that the train's headlight was burning and would have been seen by an alert driver approaching from Appellees' direction.

show that James Glinsey was engaged in a joint enterprise with driver Willie Glinsey, so as to impute the driver's alleged negligence to the passenger. Fourth, Appellant asserts that Appellees' evidence concerning the failure to sound the bell and whistle should have been excluded. Fifth, Appellant challenges the District Court's jury instruction that Ohio law requires a train to sound its whistle from 80 to 100 rods from the crossing and continuously until the train has reached the crossing.

We deal first with Appellant's contentions concerning contributory negligence and proximate cause. Ohio law governs our answers to these questions, since the District Court has jurisdiction solely on the basis of diversity of citizenship. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We must apply Ohio law as we believe the Ohio Supreme Court would state it, if it had the opportunity to do so in this case. *See* Pomerantz v. Clark, 101 F. Supp. 341, 344–345 (D.Mass.1951); Essex Universal Corp. v. Yates, 305 F.2d 572, 580–582 (Friendly, J., concurring) (2d Cir. 1962).

The statute invoked by Appellees states:

"Every company shall attach to each locomotive engine passing upon its railroad a bell of the ordinary size in use on such engines and a steam or compressed air whistle. When an engine in motion and approaching a turnpike, highway, or street crossing or private crossing where the view is obstructed by embankment, trees, curve, or other obstruction to view, upon the same line with the crossing, and in like manner where the railroad crosses any other traveled place, by bridge or otherwise, the engineer or person in charge of such engine shall sound such whistle at a distance of at least eighty and not further than one hundred rods from such crossing and ring such bell continuously until the engine passes the crossing." § 4955.32.

"Every engineer or person in charge of an engine who fails to comply with section 4955.32 of the Revised Code is personally liable [to the state for a penalty from $50 to $100]—The company in whose employ such engineer or person in charge of an engine is, as well as the person himself, is liable in damages to a person or company injured in person or property by such neglect or act of such engineer or person." § 4955.34

Thus, a railroad must blow its whistle at a certain distance from each crossing and ring its bell until it reaches the crossing. Section 4955.34 imposes liability in damages for injuries caused by a failure to do this.

These two sections were first interpreted in Pennsylvania Co. v. Rathgeb, 32 Ohio St. 66 (1877), where the Ohio Supreme Court stated:

"It is evident from [the statutory] language that the failure to give signals must have occasioned the accident, that is, must have been the proximate cause of it before recovery can be had. The injury must happen "by neglect" of the engineer. If it occurred from some other cause, liability can not arise therefor, under that statute. Indeed, this statutory duty is not different in the responsibility it imposes upon railroad companies from that arising under the common law. Railroads must be careful. If they neglect this duty and such neglect occasions damage, they are responsible. But, though they may be negligent in some degree, if no damage arises, no liability exists. That is, if the injury complained of was not brought about by the negligence in question, but by something else not chargeable to the company, they can not be held.

Before, therefore, plaintiff can recover, because signals were not given, he must cause it to appear that this failure of duty brought about the disaster; for if his own imprudence was the moving cause, he can not maintain his action, although the company may

not have observed the provisions of the statute."

The *Rathgeb* syllabus stated Ohio law: [3]

"Ordinary prudence requires that a person in the full enjoyment of the faculties of hearing and seeing, before attempting to pass over a known railroad crossing, should use them for the purpose of discovering and avoiding danger from an approaching train; and the omission to do so, without a reasonable excuse therefor, is negligence, and will defeat an action by such person for an injury to which such negligence contributed."

Subsequent Ohio decisions followed the *Rathgeb* holding, often finding as a matter of law that a plaintiff's failure to use "ordinary prudence" and his sight and hearing had been the cause of the accident, despite the railroad's failure to obey statutory or administrative duties.[4] Baltimore & O. R. R. v. McIlyar, 77 Ohio St. 391, 83 N.E. 497 (1908) (plaintiff landowner's refusal to allow railroad onto his property to mend fencing as required by statute "proximately contributed" to bring about the dangerous fencing, which later caused injury to plaintiff's horse); Pennsylvania R. R. v. Rusynik, 117 Ohio St. 530, 159 N.E. 826 (1927) (plaintiff "directly contributed" to the accident by failing to look for an approaching train); Cobb v. Bushey, 152 Ohio St. 336, 89 N.E.2d 466 (1949) (plaintiff's inattention in crossing the tracks was "the sole proximate cause" of the collision); Capelle v. Baltimore & O. R. R., 136 Ohio St. 203, 24 N.E.2d 822 (1940) (plaintiff's negligence was "the approximate cause of the collision," with the railroad's statutory violation a

"mere condition" of the accident); Patton v. Pennsylvania R. R., 136 Ohio St. 159, 24 N.E.2d 597 (1939) (decedent's failure to exercise due care was "the proximate cause" of his death.)

■ For a railroad's violation of a safety statute to have been "the proximate cause" of an accident, it must be shown that the accident would not have occurred if the railroad had met its obligations. Thus, if a driver would not have avoided an accident even if the train had fulfilled its legal duties, the railroad would not be liable for injuries suffered, since its legal violation would not have been the proximate cause of the accident. North v. Pennsylvania R. R., 9 Ohio St.2d 169, 224 N.E.2d 757 (1967); Zuments v. Baltimore & O. R. R., 27 Ohio St.2d 71, 271 N.E.2d 813 (1971).

Of course, it is not clear from the face of the Ohio whistle-bell statute whether this conclusion mandates a contributory negligence instruction or merely requires a plaintiff to prove proximate causation. The Ohio Supreme Court has, however, resolved this question. *See Rathgeb, supra.* In Bahm v. Pittsburgh & L. E. R. R., 6 Ohio St.2d 192, 217 N.E.2d 217 (1966), the Court reaffirmed that contributory negligence was a defense. However, the Court pointed out that it would not constitute a defense if a plaintiff had been only slightly negligent. The Court's syllabus stated:

"Use of the phrase, 'in the slightest degree,' or the phrase, 'in any degree,' in connection with contributory negligence in a charge to a jury constitutes prejudicial error whether the phrase

3. The Ohio Supreme Court states Ohio law only through its syllabi. Individual opinions of the justices do not carry precedential weight. Thackery v. Helfrich, 123 Ohio St. 334, 336, 175 N.E. 449 (1931). *See* 14 Ohio Jur.2d § 250. This rule does not apply to opinions from the Ohio Courts of Appeals. *See* Carruthers v. Kennedy, 121 Ohio St. 8, 166 N.E. 801 (1929); Royal Indemnity Co. v. McFadden, 65 Ohio App. 15, 29 N.E.2d

181 (Ham.Co.1940); Parkview Hospital v. Hospital Service Ass'n, 8 Ohio App.2d 315, 222 N.E.2d 314 (Franklin Co. 1966); Gustin v. Sun Life Assurance Co., 154 F.2d 961, 962 (6th Cir.), cert. denied, 328 U.S. 866, 66 S.Ct. 1374, 90 L.Ed. 1636 (1946).

4. Railroads must comply with a host of safety requirements. *See* 46 Ohio Jur.2d §§ 256–275 (1961).

pertains to the issue of proximate cause or to the issue of negligence itself."

In 1971 the Ohio Supreme Court reaffirmed this view in another railroad crossing case, where the Court said:

"The driver of a motor vehicle about to pass over a railroad grade crossing on a public highway is required both to look and to listen for approaching trains, and the looking and listening must be at such time and place and in such manner as to be effective for that purpose. Where the uncontrovertible physical facts demonstrate that plaintiff's decedent did not so do, then such failure on his part was a proximate cause of the collision as a matter of law. North v. Pennsylvania Rd. Co. (1967), 9 Ohio St.2d 169, 224 N. E.2d 757; Boles v. Baltimore & Ohio Rd. Co. (1959), 168 Ohio St. 551, 156 N.E.2d 735." Zuments v. Baltimore & O. R. R., 27 Ohio St.2d 71, 72, 271 N. E.2d 813, 814 (1971).

In North v. Pennsylvania R. R., the Ohio Supreme Court reversed the Court of Appeals, affirming the trial court's grant of summary judgment to the railroad on grounds of contributory negligence.

The syllabus in *North* provided:

"The driver of a motor vehicle, about to pass over a railroad grade crossing on a public street, must exercise his senses of sight and hearing to discover whether trains are also about to pass over such crossing, and such exercise of the senses must be made at such time and place as to be effective for the purpose. (Syllabus of Boles v. Baltimore & Ohio Rd. Co., 168 Ohio St. 551, 156 N.E.2d 735, approved and followed)." North v. Pennsylvania R. R., 9 Ohio St.2d 169, 224 N.E.2d 757 (1967).

■ Given this wealth of Ohio judicial support for the concept of contributory negligence in railroad crossing cas-

es, we conclude that the District Court erred in denying an instruction on that defense and in excluding evidence to bolster the railroad's contentions to that end. Appellees' novel argument would have us discard a century of case law that has weaved contributory negligence into the tapestry of Ohio railroad accident law. We do not believe that the Ohio Supreme Court would do this, despite the force of Appellees' argument, and we may not do that which we believe Ohio's highest court would refuse to do.

Thus, we reject Appellees' contention that the recent case of McCallie v. New York Central R. R., 23 Ohio App.2d 152, 261 N.E.2d 179 (Lorain Co.Ct.App. 1969), dictates a contrary conclusion. In *McCallie*, an Ohio Court of Appeals held that section 4955.33 (failure to maintain a "crossbuck" sign at a crossing) imposes "absolute liability for damages . . . and, hence, precludes contributory negligence as a defense to an action brought for a violation of such section." The *McCallie* case, heavily relied upon by the District Court, deals with a statutory obligation requiring railroads to give what may be the only visual notice a driver has that he is approaching a railroad crossing. Without such notice a driver cannot always be expected to be on the lookout for an approaching train, so that his failure to be alert in the absence of a warning that he should be alert may properly be irrelevant to his right to recover. When a railroad fails to blow its whistle and ring its bell, however, a driver may still be warned of an approaching train by a shining headlight or a properly maintained warning sign. Furthermore, the *McCallie* court itself recognized that "negligence and contributory negligence" are issues under sections 4955.32 and 4955.34. Thus, no significant support exists for Appellees' contention that Ohio law precludes a defense of contributory negligence in cases concerning the whistle-bell statute.[5]

5. Were we sitting as a court with authority to interpret Ohio law, we might find Appellees' arguments persuasive. The same basic consideration in *McCallie* ("a statutory

■ We point out, however, that the defense of contributory negligence itself may be overcome if the plaintiff is able to show "a reasonable excuse" for failing to discover an approaching train. *Rathgeb* syllabus, 32 Ohio St. at 66. One is not charged with a duty to hear a whistle that has not been sounded or see a train which cannot be seen. Given evidence that no warning sounds were given and that there were obstructions along the highway to obscure the train from the driver's view, the jury could believe that the Glinseys exercised ordinary prudence in approaching the crossing and that the train's failure to sound its whistle or bell was the proximate cause of the accident. Sturgell v. Detroit, T. &. I. R. R., 107 Ohio App. 5, 156 N.E.2d 477 (Pike Co. 1958); Cleveland, C. & C. R. R. v. Crawford, 24 Ohio St. 631 (1874). "[A] person to whom a duty of care is owing may assume that it will be performed, so that failure to anticipate negligence does not operate to defeat an action for injuries sustained." 16 Ohio Jur.2d Railroads § 351 (1961). *See* Meek v. Pennsylvania Co., 38 Ohio St. 632 (1883); Hart v. Devereux, 41 Ohio St. 565 (1885). In short, "if a traveler, acting as a reasonably prudent person, is misled by the absence of signals or warnings required of a railroad company into believing that he might cross the tracks in safety and is struck by a train while attempting to do so, he is not precluded from recovering damages." 46 Ohio Jur.2d Railroads § 353, p. 387 (1961). *See* Schweinfurth v. Cleveland, C., C. & St. L. Ry., 60 Ohio St. 215, 54 N.E. 89 (1899); Cleveland, C., C. & St. L. Ry. v. Kuhl, 123 Ohio St. 552, 176 N.E. 222 (1931).

Thus, the District Court's denial of a directed verdict for the railroad was proper. The disputes concerning Appellees' ability to see the approaching train's headlight, the presence of warning signs, and related issues should be submitted to the jury for factual resolution.

Because we remand for a new trial on the issues of proximate causation and contributory negligence, we see no reason to respond to several other of Appellants' objections. One point, however, cannot escape our attention, because of its patent erroneousness. The District Court charged the jury that Ohio law requires that

> "both the horn or whistle and the bell must be continuously sounded until such engine passes the crossing. . . . Accordingly, if you find in this case that the engineer Johnson failed to either ring his bell for the full 1320 or more feet, or that he failed to continue to sound his horn while his train covered the 1320 feet up to and over the Parmely Road crossing, then you must thereby find that the railroad has violated the Ohio law. . . ."

This charge was incorrect because it interprets Ohio law to require that the train's whistle (or horn) be sounded continuously for the entire distance of 1320 feet to the crossing.

■ Section 4955.32 states: ". . . [T]he engineer . . . shall sound such whistle at a distance of at least eighty and not further than one hundred rods from such crossing and ring such bell continuously until the engine passes the crossing." The language of this section attaches one condition to the blowing of the whistle and one requirement to the ringing of the bell. The whistle's sounding must occur be-

---

direction to perform a duty, coupled with a liability in damages for a failure to perform that duty") that precluded a contributory negligence defense under section 4955.33 exists under sections 4955.32 and 4955.34. Furthermore, if contributory negligence is not precluded by the final sentence in section 4599.34, then it seems to be surplusage, since under ordinary negligence law a plaintiff's

situation would be identical without the presence of that sentence. We are, however, limited to a best estimate of what the Ohio Supreme Court would do if it could consider Appellees' contentions. Our best estimate is that the Ohio Supreme Court would reaffirm its prior holdings rather than accept Appellees' point of view.

tween 80 to 100 rods from the crossing. The bell ringing must be continuous from that point. The whistle need not be blown continuously. Pennsylvania R. R. v. Stegaman, 22 F.2d 69 (6th Cir. 1927). Appellees argue that the *Stegaman* result was overruled in 1953, when the Ohio Revised Code replaced the General Code. The General Code provision had a comma between "from such crossing" and "and ring such bell continuously," making explicit the application of "continuously" solely to the ringing of the bell. An argument that the Ohio legislature intended to change the railroad's whistle requirement by removing a comma, when the change occurred amidst the wholesale structural and grammatical revision of Ohio's statutory laws, is frivolous. In fact, the Revised Code simply corrected the grammatical error in the General Code section, since a comma should ordinarily not be inserted between two verbs when they are conjoined by the word "and".

The judgment is reversed, and the cause is remanded for a new trial, to be conducted in conformance with this opinion.